**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| EQUAL EMPLOYMENT ) <br> OPPORTUNITY COMMISSION, ) <br> ) <br> Plaintiff, ) <br> ) <br> and ) <br> ) <br> MELISSA BELL, et al., ) <br> ) <br> Plaintiff-Interveners ) <br> ) <br> v. ) <br> ) <br> AKAL SECURITY, INC., ) <br> ) <br> Defendant. ) <br> ) | Case No. 08-1274-JTM |

## **MEMORANDUM AND ORDER**

This matter is before the court on the following motions:

1. EEOC's motion to compel (Doc. 66);

2. Plaintiff-Intervener's motion for sanctions (Doc. 74);

3. EEOC's motion for sanctions (Doc. 87);

4. AKAL's motion for leave to file a surreply and to strike a witness declaration (Doc. 89);

5. EEOC's motion for an extension to respond to Doc. 89 (Doc. 102); and

6. AKAL's motion for leave to file a surreply (Doc. 115).

The rulings are set forth below.

**Background**

This action by the Equal Employment Opportunity Commission (EEOC) is based on pregnancy discrimination and retaliation. Highly summarized, AKAL provides contract security services to military agencies. EEOC alleges that AKAL "has engaged in unlawful employment practices at U.S. Army bases *nationwide*, in violation of Sections 703(a) and 704(a) of Title VII, 42 U.S.C. § 2000e-2(a) and § 2000e-3(a)." (Doc. 1, p. 3, emphasis added). Relief is sought on behalf of nine individually named employees **"and other similarly-situated female security guards who worked for AKAL on U.S. Army Bases** from April 3, 2004 to the present." (Doc. 1, p. 1, emphasis added).[1]

**EEOC's Motion to Compel**
**AKAL's Motion for Leave to File a Surreply and to Strike**
**EEOC's Motion for an Extension**

EEOC moves to compel AKAL to provide complete answers to EEOC's first set of interrogatories and production requests. The parties' discovery disagreements generally relate to: (1) the geographical scope of discovery, (2) the production of personnel files, and (3) the production of electronically stored information. However, the motion to compel has been muddied by the parties' collateral arguments concerning (1) AKAL's contested motion

---

[1] The individually named women have also intervened in the case. (Doc. 12, Interveners' Complaint).

-2-

to file a surreply and to strike a witness declaration and (2) EEOC's contested motion for an extension of time to respond to AKAL's surreply.[2]

With respect to the surreply, AKAL's request shall be GRANTED because the proposed surreply provides additional information concerning documents delivered to EEOC's Kansas City office shortly before EEOC filed its reply brief.[3] The surreply attached to AKAL's motion has been considered by the court and a separate filing of the surreply is not required.

AKAL also moves to strike a "declaration" attached to EEOC's reply brief. The "declaration" was signed by Scott Dyer, a Special Agent with the Department of Defense. It counters AKAL's assertion that certain documents were unavailable because the documents were "taken" as part of a Department of Justice investigation. AKAL argues that the declaration should be struck because Mr. Dyer "has not been identified as a witness ... in EEOC's initial disclosures, responses to interrogatories calling for identification of all witnesses, or any pleading." (Doc. 89, p. 2). This argument is patently frivolous and summarily rejected. Mr. Dyer is not a "witness" concerning the claims and defenses in this

---

[2] EEOC's motion (Doc. 107) for an extension of time to file its response to AKAL's motion shall be GRANTED. The response has been filed (Doc. 106) and considered by the court.

[3] AKAL delivered the documents **after** EEOC filed its motion to compel and **after** AKAL filed its response brief. The belatedly produced documents were delivered to a receptionist at EEOC's office on the afternoon of the day before Thanksgiving. Delivering documents to a receptionist the day before a holiday break and then criticizing opposing counsel's failure to acknowledge delivery reflects "sharp practices" by counsel that do not pass unnoticed.

case for purposes of Fed. R. Civ. P. 26(a)(1). Rather, his declaration is offered to rebut AKAL's *discovery* representations that DOJ *took and retained possession* of AKAL documents.[4] Mr. Dyer's "declaration" is an appropriate attachment to the reply brief contesting arguments in a response brief. Accordingly, the motion to strike Mr. Dyer's declaration is DENIED. Having resolved the parties' peripheral arguments concerning the surreply and motion to strike, the analysis shifts to EEOC's motion to compel.

As noted above, EEOC seeks to compel *complete* answers to its first set of interrogatories and production requests. Specifically, EEOC seeks an order directing AKAL to: (1) provide interrogatory responses and documents concerning AKAL's operations at *all* military bases where AKAL provided security services; (2) provide full and complete production of personnel files for certain class members and facility-level managers; and (3) produce responsive electronically-stored documents by a date certain. AKAL opposes the motion, arguing (1) EEOC failed to confer in good faith; (2) the geographical scope of discovery is improper, (3) all existing documents have been produced, and (4) electronic discovery is no longer an issue. The issues are discussed in greater detail below.

---

[4] AKAL asserts that Dyer's declaration should be struck because the declaration is "unverified." However, Mr. Dyer signed the declaration after swearing "under penalty of perjury that the foregoing is true and correct" as provided in 28 U.S.C. 1746. The assertion that the declaration is "unverified" is specious.

AKAL also asserts that Dyer "specifically admits he does not have personal knowledge of one of the two facilities from which the personnel files at issue were confiscated." (Doc. 89, p. 3). The court has carefully reviewed Dyer's declaration and finds no such "specific admission" by Dyer concerning a lack of personal knowledge. AKAL's arguments and inaccurate representations are troubling.

-4-

**Duty to Confer in Good Faith**

AKAL argues that EEOC did not confer in good faith because EEOC did not specify that a motion to compel would be filed if the discovery disputes remained unresolved. This argument is rejected. EEOC sought and was granted numerous extensions of its deadline to file a motion to compel while the parties conferred. AKAL concedes that the parties discussed the issues during various teleconferences. Equally important, AKAL continues to oppose the discovery requested by EEOC. Under the circumstances, EEOC satisfied its duty to confer in good faith and AKAL's argument is rejected.

**Geographical Scope of Discovery**

AKAL provided security guards at eight military bases during the relevant time period. Beginning in 2005, the individually named plaintiff who worked at four of the bases filed charges of pregnancy discrimination with the EEOC.[5] AKAL's discovery responses were limited to the four bases where the individually named plaintiff worked.[6] EEOC moves to compel complete responses to Interrogatories 6, 9, 10, and 12-21 and Production Requests

---

[5] The eight bases are: Fort Riley, KS; Fort Hood, TX; Fort Campbell, KY; Fort Stewart, GA; Fort Lewis, WA; Sunny Point Military Ocean Terminal, NC; Blue Grass Army Depot, KY; and Anniston Army Depot, AL. The individually named plaintiffs worked at Forts Riley, Hood, Campbell and Stewart.

[6] AKAL recently produced some discovery materials from Fort Lewis after EEOC identified a new class member working at Fort Lewis by name. AKAL's position that discovery is not warranted at a particular army base until EEOC identifies a named plaintiff is rejected. EEOC may bring a Section 707 pattern and practice action and conduct discovery without naming individual plaintiffs.

-5-

10, 12, 15, 16, and 19-28, arguing that the scope of discovery should include the other four bases where AKAL provided security services. For the reasons set forth below, AKAL's objections to limit the scope of discovery are rejected.

EEOC conducted an investigation of the various administrative claims of discrimination and concluded that AKAL had discriminated against pregnant female guards. This conclusion was based, in part, on evidence that AKAL had relied on provisions in its contracts with the Army to remove pregnant guards from their employment.[7] EEOC also contends that certain AKAL supervisors stated that the company did not allow pregnant women to work as guards.

Based on its administrative findings, EEOC issued determination letters stating that "charging party and other similarly situated female guards" had been subjected to pregnancy discrimination. Following unsuccessful efforts at conciliation, EEOC filed this lawsuit, seeking relief for nine individually named women **"and other similarly-situated female security guards who worked for AKAL on U.S. Army Bases."**

The claims arise under both Sections 706(f) **and 707** of Title VII.[8] Section 706(f)

---

[7] The eight bases were covered by three separate contracts containing the same language. The controversial contract provisions relate to a physical agility test, a firearms qualification test, and "medical requirements."

[8] The corresponding statute for Section 706(f)(1) and (3) of Title VII is 42 U.S. 2000e-5(f)(1) and (3). The corresponding statute for Section 707 of Title VII is 42 U.S. 2000e-6. For editorial consistency, the court will refer to the claims as Section 706 and Section 707 claims.

empowers the EEOC to file a lawsuit to remedy *an individual's* claim of discrimination. Section 707 provides separate authority for the EEOC, in its own right, to bring an action under a **"pattern and practice"** theory to correct unlawful discrimination. This latter provision is designed to provide the government with a tool to vindicate the broad public interest in eliminating unlawful practices **that may or may not address the grievances of particular individuals.** EEOC v. Continental Oil Co., 548 F.2d 884, 887 (10th Cir. 1977)(citing U.S. v. Allegheny-Ludlum Industries, 517 F. 2d 826 (5th Cir. 1975). Accordingly, a Section 707 pattern and practice action is not confined to individual grievances. Id.

The general standard for the scope of discovery in an EEOC case was defined by the Tenth Circuit in Rich v. Martin Marietta Corporation:

> The scope of discovery through interrogatories and requests for production of documents is limited only by relevance and burdensomeness, and in an EEOC case the discovery is extensive. This is a factor which the court should balance on the benefit side as against the burden to the defendant in answering the interrogatories. If the information sought promises to be particularly cogent to the case, the defendant must be required to shoulder the burden. There is a remedy, of course, if the effort fizzles. The costs can finally be assessed to the interrogating parties.

522 F.2d 333, 343 (10th Cir. 1974)(internal citations omitted).

AKAL argues that discovery should be limited to (1) the facilities where the individual plaintiffs were employed and (2) facilities where EEOC has located a class member. Citing Rich v. Martin Marietta Corporation and EEOC v. CRST Van Expedited,

Inc., 2009 WL 2524402 (N.D. Iowa, Aug. 13, 2009).[9] However, AKAL's reliance on <u>Rich v. Martin Marietta Corp.</u> is not persuasive because the discovery issue in that case was whether the trial court erred in ***denying*** plaintiffs' plant-wide discovery. The Tenth Circuit held that limiting plaintiffs' discovery to specific departments while allowing the company to defend with broader statistical evidence was error. Whether discovery should extend beyond the facility where plaintiff worked was simply not an issue before the circuit court. Moreover, contrary to AKAL's position, the Tenth Circuit rejected the notion that discovery in EEOC cases is narrowly drawn. <u>Id.</u> at 344 ("It cannot be said, therefore, that the policy of this court has been to narrowly circumscribe discovery in EEOC cases.")

AKAL's citation to <u>EEOC v. CRST Van Expedited</u> is equally unpersuasive. First, with due respect to Chief Judge Reade, a ruling by a district judge in Iowa is not binding on this court. But even more importantly, a review of Judge Reade's opinion reveals a complex procedural history based on the parties' pleadings, various case management orders, dispositive rulings, Eighth Circuit precedent, and "Show Cause" orders which have no application whatsoever to the discovery dispute before this court. For example, Judge Reade

---

[9] AKAL incorrectly cites the two cases, listing the respective case names as "Rich v. EEOC" and "EEOC v. Grant" The EEOC was not the defendant in the Tenth Circuit case and Grant was not the defendant in the Iowa case. Additionally, AKAL quotes language from various cases but fails to properly cite the location of the quotes in the case citation. The multiple errors and improper citations raise serious doubt whether the response brief was prepared or even reviewed by a licensed attorney. AKAL counsel are admonished that future errors of this nature may result in the imposition of sanctions and further inquiry into counsel's continued practice before this court. Local counsel is also cautioned that signing and filing documents in this case makes her responsible for the content and arguments presented.

made clear that the Iowa case was a Section 706 case and ***"notably" not a Section 707 pattern and practice case***. CRST, 2009 WL 2524402 at *7, FN 14. The matter before this court involves a Section 707 pattern and practice claim as well as a Section 706 action. EEOC v. CRST Van Expedited simply provides no persuasive authority for the discovery dispute in the instant case.[10]

In addition to citing inapplicable cases, AKAL's narrow view of discovery fails to address the appropriate factors for determining relevance in an EEOC case. The starting point for determining relevance and the geographical scope of discovery is the complaint. As previously noted, EEOC filed this case under Section 706 to secure relief for nine named plaintiffs and also under Section 707. Repeating what has already been stated, a Section 707 "pattern and practice" claim is not limited to individual grievances. EEOC v. Continental Oil Co., 548 F.2d at 887 (10th Cir. 1977). Moreover, EEOC's complaint and requested relief are not limited to particular facilities but rather seek to correct alleged illegal discrimination by AKAL at "U.S. Army Bases." Consistent with the Section 707 claim, EEOC seeks a permanent injunction enjoining AKAL and its agents "from affording female employees less favorable terms and conditions of employment because of pregnancy." The relief sought by the EEOC under Section 707 should not be limited to the four bases where the individually named plaintiffs worked.

The second and equally important factor which the court must consider is "what"

---

[10] AKAL cites other district court opinions that are similarly unpersuasive because those cases do not involve a Section 707 action by EEOC.

specifically is sought by the discovery requests.[11]  Interrogatory 6 and Production Request 10 seek information and documents reflecting the qualifications, prerequisites, and requirements for working for AKAL as a guard on U.S. Army Bases during the relevant time period.  Interrogatories 9, 10, and 12-21 and Production Requests 12, 15, 16, and 19-28 seek information and documents concerning AKAL's "policies" related to discrimination, contract provisions, pregnancy, leave, light duty, re-certification, discipline, vacation leave, gate assignments, medical certification, the contracts with the Army, and employment decisions. Because EEOC asserts a Section 707 pattern and practice claim against AKAL and the specific discovery requests concern AKAL "policies," the court concludes that the geographical scope of discovery for the 13 interrogatories and 14 production requests should extend to all Army Bases served by AKAL during the relevant time period.  Accordingly, EEOC's motion to compel complete responses to the above-listed interrogatories and production requests shall be GRANTED.

**Personnel Files**

Production Requests 1, 2, and 3 seek personnel files and employment records for certain named plaintiffs and AKAL managers.  AKAL produced some documents but EEOC seeks to compel "complete" production.  Specifically, EEOC argues that the personnel files

---

[11] In this court's opinion it is virtually impossible to rule on whether discovery should be limited to a particular work group, department, facility, or region without considering the specific discovery request involved.

"were not produced in the order in which they were kept." Doc. 67, p. 10. AKAL counters that the "personnel files" were produced in the manner in which they were kept and this request should be denied. EEOC presents no persuasive evidence to counter AKAL's representation. The court accepts AKAL's representation and this portion of the motion shall be denied.

EEOC also complains that responsive documents from the personnel files of AKAL managers Glasson, Crumley, and Chesser have not been produced. AKAL responds that it conducted a diligent search but has not located the documents that are the subject of the motion to compel. AKAL also asserts that certain documents were seized or taken by the Department of Justice (DOJ) during a separate investigation and that the documents are possibly in the possession of the Department of Justice.

The issue of whether AKAL has the original or copies of documents provided to the DOJ investigators has spawned another flurry of declarations and affidavits. EEOC provides Scott Dyer's declaration that (1) original documents were only seized from Fort Riley and (2) copies were provided by AKAL's then counsel (Bracewell & Giuliani) for AKAL's operations at Fort Campbell.[12] AKAL's surreply contains an affidavit by counsel explaining that "30-50" boxes placed in storage by Bracewell & Giuliani have not been searched. The affidavit also states that Bracewell "does not have a document log reflecting what documents are stored off-site" and that "none of the boxes have a label indicating that it contains any

---

[12] Some of the missing documents are from persons employed at Fort Campbell.

personnel files or documents." Doc. 89, p. 2. Bracewell also stated that "it would be very expensive and time-consuming to have a paralegal go through all 30-50 boxes by hand to search for documents not believed to be in Bracewell's possession."

The court has carefully studied the parties' declarations and affidavits and remains unpersuaded that AKAL has conducted a diligent search. Bracewell provided AKAL documents to DOJ investigators and the implied suggestion that a law firm would produce documents without retaining either the original or a copy of the produced document is simply not credible. In addition, the affidavit by AKAL's counsel does not explain what Bracewell did with the originals or copies of AKAL documents; the most reasonable conclusion is that the documents were sent with other AKAL documents to storage. Finally, the approximation of "30-50" boxes suggests Bracewell conducted only a cursory review.

There is no suggestion that AKAL documents placed in a warehouse by counsel (Bracewell & Giuliani) are not under AKAL's control. Moreover, the contents of the boxes have not been examined for documents responsive to EEOC's production requests. Under the circumstances, AKAL shall conduct an inspection of the contents of the boxes for responsive documents. The responsive documents or a certification that each box has been searched and that no documents have been located shall be produced by **September 15, 2010.**

EEOC also moves to compel the complete production of Angel Romero's personnel records. Mr. Romero, a former Chief of Guards of AKAL's security operations at Fort Riley, was involuntarily terminated in February 2005. EEOC argues that certain documents related

to his termination have not been produced. AKAL counters that it has produced all of the documents in its possession. Based on representations that the requested records do not exist, the motion to compel additional documents concerning Angel Romero shall be denied.

**Electronic Discovery**

EEOC seeks an order compelling AKAL to produce electronic discovery by a date certain. However, AKAL apparently delivered its electronically stored information to a receptionist at EEOC's office shortly before EEOC's reply brief was filed. Accordingly, the request for a date certain for production of electronic records is moot.

**IT IS THEREFORE ORDERED** that EEOC's motion to compel **(Doc. 66)** is **GRANTED IN PART** and **DENIED IN PART**, consistent with the rulings set forth above.

**IT IS FURTHER ORDERED** that AKAL's motion **(Doc. 89)** (1) for leave to file a surreply is **GRANTED** and (2) to strike is **DENIED.** EEOC's motion for an extension of time **(Doc. 102)** is **GRANTED.**

### Interveners' Motion for Sanctions
### EEOC's Motion for Sanctions
### AKAL's Motion for Leave to File a Surreply

Interveners and EEOC (collectively "plaintiffs") move for sanctions against AKAL, arguing that the court should invoke its inherent authority to punish AKAL for engaging in bad faith or abusive litigation tactics. Specifically, plaintiffs contend that AKAL failed to

bring a representative with full settlement authority to the mediation conference, failed to have an insurance representative attend the mediation conference, and wrongfully withdrew from mediation efforts several months after the initial conference. AKAL disputes plaintiffs' conclusions, assumptions, and factual recitations of events.

The court has carefully considered the respective briefs and arguments concerning sanctions and is not persuaded that sanctions are warranted.[13] Contrary to plaintiffs' assertion, AKAL's representative (Janet Gunn, AKAL's highest ranking human resources executive) attended the mediation conference with full settlement authority.[14] Also, contrary to plaintiffs' contentions, the insurance carrier's lack of participation in the first mediation conference was the result of an extremely high deductible and issues about coverage. It is unclear how AKAL could have compelled the carrier to participate short of initiating a separate action against the carrier. Under the circumstances, AKAL should not

---

[13] The court will not belabor this opinion with a detailed recitation of each party's version of events leading up to the motion. Suffice it to say, there are factual disagreements and disagreements concerning various assumptions and conclusions that would require a mini-trial to sort out. The circumstances presented do not warrant a mini-trial for this litigation within litigation.

[14] EEOC concedes that the parties made significant progress negotiating non-monetary aspects but were unable to reach agreement on monetary aspects of a proposed settlement.

be sanctioned for the peculiar business practices of its insurer.[15] Finally, the failure of subsequent efforts to mediate a resolution of the claims in this case devolves into a "he-said-she-said" exchange of unproductive personal attacks by and against counsel. The bottom line is that the case has not settled because plaintiffs and AKAL disagree on the value the case. The parties should move on, complete discovery, and, if necessary, proceed to trial.

**IT IS THEREFORE ORDERED** that plaintiffs' motions for sanctions **(Doc. 74 & 87)** are **DENIED.** AKAL's motion for leave to file a surreply **(Doc. 115)** is **DENIED.**

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 31st day of August 2010.

S/ Karen M. Humphreys
_____
KAREN M. HUMPHREYS
United States Magistrate Judge

---

[15] The insurer was an affiliate of American Insurer Group (AIG) which refused to involve itself until the claims reached the million dollar deductible. AIG collapsed in 2009 and a new entity (Chartis) is now involved. Chartis agreed to provide coverage in December 2009 and has now taken an active role in monitoring the claims and the litigation.